**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **STEPHEN COOK, Individually and on** | : | |
| **Behalf of All Others Similarly Situated,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 1:19-cv-195** |
| | : | |
| **v.** | : | **Judge Dlott** |
| | : | |
| **THE OHIO NATIONAL LIFE** | : | |
| **INSURANCE COMPANY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION OF JUNE 28, 2019**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, Defendants The Ohio National Life Insurance Company ("ONLIC"), Ohio National Life Assurance Corporation ("ONLAC"), Ohio National Equities, Inc. ("ONEQ") (collectively, the "ON Contracting Defendants"), and Ohio National Financial Services, Inc. ("ONFS") object to the Magistrate Judge's Report and Recommendation of June 28, 2019 (the "R&R").  [Doc. No. 26.]  As discussed more fully in the attached Memorandum in Support, Defendants respectfully object to the R&R on the following grounds:

(1) The R&R incorrectly recommends the denial of Defendants' Motion to Dismiss,[1] in contravention of clear Ohio law.  This Court should reject the R&R and grant the Motion to Dismiss.

(2) The R&R incorrectly concludes that Plaintiff has standing as a third-party beneficiary of the Selling Agreement at issue, where the express language of such agreement makes clear that it was entered neither directly nor primarily for Plaintiff's benefit— as required under Ohio law.  Plaintiff lacks such standing, as a matter of law.

---

[1] Although the R&R refers to Defendants' Motion as (and discusses the standard applicable to) a Rule 12(c) mmotion, Defendants actually moved for dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6).  [Doc. No. 10 (Motion to Dismiss).]  That is inconsequential, however, inasmuch as the same standard applies to both types of motions.  See, e.g., JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (same standard applies to motion for judgment on the pleadings under Civil Rule 12(c) as to motion to dismiss under Civil Rule 12(b)(6)).

    (3) The R&R incorrectly concludes that Plaintiff has alleged a viable "alternative" claim for unjust enrichment. Where the subject of an unjust enrichment claim is covered by an express contract, the existence of which is undisputed, such claim fails as a matter of law even if the plaintiff lacks standing to enforce the contract. That is the case here, and the unjust enrichment claim should be dismissed.

As a result, the R&R repeatedly runs afoul of Ohio law in numerous respects. To the contrary, Defendants' Motion to Dismiss is meritorious and should be granted, in all respects. Consistent with Civil Rule 72(b)(3), the Court should reject the R&R and issue an order dismissing Plaintiff's Complaint, in its entirety.

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr.   (0042679)
Trial Attorney
Christopher J. Hogan  (0079829)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900
(Fax) (614) 365-7900
little@litohio.com
hogan@litohio.com

Attorneys for Defendants

<u>**MEMORANDUM IN SUPPORT**</u>

**I.** <u>**INTRODUCTION**</u>

The R&R must be rejected and the case dismissed in its entirety, for multiple reasons. <u>*First*</u>, the Magistrate Judge's conclusion that Plaintiff Stephen Cook ("Plaintiff") possesses third-party beneficiary standing is contrary to the plain language of the pertinent Selling Agreement and Ohio substantive law. At bottom, Plaintiff is suing to recover trail commissions that, even if actually due and payable, would be owed and paid <u>*to another party*</u>—i.e., the broker-dealer with which he is associated. In other words, even if Plaintiff was to "prevail" on his substantive claims, any recovery would necessarily—under the terms of the contract at issue—go <u>*to someone else*</u>. As a matter of law, Plaintiff lacks standing to pursue such relief.

It is well settled that "a federal court sitting in diversity must apply state substantive law[.]" <u>First Bank v. Hartford Underwriters Ins. Co.</u>, 307 F.3d 501, 528 (6th Cir. 2002). As pertinent here, Ohio law holds that an individual or entity is a third-party beneficiary of a contract <u>*only*</u> where the language of the pertinent agreement shows that the contract was entered for the <u>***direct or primary***</u> benefit of such person. <u>See</u>, e.g., <u>Westwinds Dev. Corp. v. Outcalt</u>, 2009 Ohio App. LEXIS 2519, at *7 (11th Dist., June 19, 2009) ("For a third-party beneficiary to be an intended beneficiary, the contract must have been entered into by the parties *directly or primarily* for the benefit of that person.") (emphasis in original). The fact that someone indirectly or incidentally benefits from an agreement is insufficient, as a matter of law, to vest him or her with third-party beneficiary standing. <u>See</u>, e.g., <u>Huff v. FirstEnergy Corp.</u>, 130 Ohio St. 3d 196, 200 (2011).

Here, the pertinent Selling Agreement—attached as Exhibit A-1 to Defendants' Motion to Dismiss (the "Selling Agreement")—makes clear on its face that one party (ONLIC) is the

payor of the commissions allegedly owed and one party (the contracting broker-dealer) is the payee. Individual representatives, like Plaintiff, *are neither*. To the contrary, the plain language of the Selling Agreement plainly states that: (1) Defendants' obligation to pay certain commissions pertaining to individual variable annuities was owed ***solely to the broker-dealers with whom they contracted***; and (2) any compensation to be paid to individual representatives, like Plaintiff, was to be the subject of and governed by *separate agreements* between the broker-dealer and its representatives—*agreements to which Defendants are not parties*. [Selling Agreement § 9.] Defendants never agreed to or otherwise assumed any obligation to pay an individual representative, like Plaintiff.

That, alone, reflects that the Selling Agreement, and specifically the incorporated commission provisions at the heart of Plaintiff's claims, were entered directly and primarily for the benefit of *only* the contracting broker-dealer(s). Individual representatives—like Plaintiff—are, at best, incidental beneficiaries who lack standing to enforce the Selling Agreement.

That conclusion inexorably flows from the application of Ohio law to the plain contractual language; and it compels the dismissal of Plaintiff's claims for breach of contract and declaratory relief. Indeed, the case law—both in Ohio and elsewhere—consistently reaches this same conclusion, particularly in the commission context. In recommending otherwise, the Magistrate Judge acknowledged, yet failed to properly apply, settled Ohio law. Instead, in concluding that Plaintiff has third-party beneficiary standing, the R&R improperly focuses upon: (1) unremarkable and irrelevant language in the Selling Agreement merely acknowledging and consistent with the fact that the contracting broker-dealer, like any fictional business entity, *can only provide services through its agents/representatives*; and (2) conclusory and inapposite dictum contained in a footnote in a decision form an out-of-circuit district court that addressed a

2

question of _arbitrability_, not an individual representative's standing to pursue substantive relief. But, the court has no discretion to brush aside or misapply Ohio law—particularly where there is case authority directly on point. As a result, the R&R's recommended conclusion is wrong, as a matter of law, and should be rejected.

_Second_, the practical import of the R&R, if adopted, would lead to absurd results and gut the long-recognized legal "veil" that exists between business entities and their individual constituents. Indeed, if taken to its logical conclusion, the R&R's reasoning would make every employee/agent a third-party beneficiary of his or her employer/principal's contracts involving the receipt of money simply because: (1) the entity can only perform services through such employees/agents; and (2) some of the funds received under the contract could eventually be passed through to such employees/agents as part of their compensation.

Such a rule would open the floodgates to litigation initiated by corporate employees/agents on all sorts of corporate contracts, simply based on their status as employees/agents. For example, individual lawyers could sue to enforce their firm's engagement agreements, and individual doctors could sue based on their corporate entity's contracts with vendors, or even patients. But, that is not the law, and such a result has been uniformly (and rightfully) rejected. See, e.g., Joseph v. Hosp. Serv. Distr. No. 2, 939 So. 2d 1206, 1211-12 (La. 2006) (individual physicians were not third-party beneficiaries of medical corporations contract with hospital, even though medical services could only be provided by individual doctors); Joseph v. Hosp. Serv. Distr. No. 2, 939 So. 2d 1206, 1211-12 (La. 2006); Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826 (Minn. 2012) (employees of a contractor were not entitled to enforce, as third-party beneficiaries, the "prevailing wage" provision contained in a

contract between their employer and a municipality even though they were the ones who would ultimately receive the wages).

The fact that a putative class of _contracting_ broker-dealers is already seeking the same relief from this Court in <u>Veritas Independent Partners v. The Ohio National Life Insurance Company, et al.</u>, Case No. 1:18-cv-769 (S.D. Ohio) (Dlott, J.) ("<u>Veritas</u>") only further demonstrates the absurdity of the R&R's recommended result. Indeed, given the existence of the <u>Veritas</u> case, a ruling recognizing Plaintiff's standing to sue under the same Selling Agreement(s) at issue could result in improperly _duplicative_ awards of the _same_ trail commission amounts and/or inconsistent decisions regarding the rights of actual parties versus non-parties under the same agreement(s).

_Third_, Plaintiff cannot assert a viable unjust enrichment claim, even in the "alternative," because the subject matter of such claim is covered by the terms of an express agreement—i.e., the Selling Agreement—the existence of which is _undisputed_. Where the existence of a contract covering the subject matter of an unjust enrichment claim is undisputed, such claim necessarily fails and cannot be pled in the "alternative"—even if the plaintiff lacks standing to enforce it.

In concluding otherwise, the Magistrate Judge conflated this case with one where the existence of a contract covering the subject matter at issue is in dispute. It is not. Hence, in these circumstances, no "alternative" claim for unjust enrichment is available, and such claim must be dismissed. <u>See</u>, <u>e.g.</u>, <u>Ford v. Pa. Higher Educ. Assistance Agency</u>, 2018 U.S. Dist. LEXIS 44549, at *19-23 (N.D. Ohio, Mar. 19, 2018) (dismissing "alternative" unjust enrichment claim against non-contracting party because such claim was "dependent on the existence and validity" of the underlying contract).

In sum, for these and the other reasons discussed below, the R&R is legally incorrect and should be rejected, with the Complaint dismissed in its entirety.

II.          **OVERVIEW OF PERTINENT ALLEGATIONS/FACTS**

Because this Court's review of Defendants' objections is "de novo" under Civil Rule 72(b)(3), the pertinent "facts" are the same as those presented to the Magistrate Judge. They consist of the well-pleaded allegations of the Complaint and other materials properly considered under Civil Rules 12(b)(1) and 12(b)(6), including the Selling Agreement referenced in the Complaint and attached as an exhibit to Defendants' Motion to Dismiss.

The factual predicate of Plaintiff's three claims (breach of contract, declaratory relief, and unjust enrichment) is the same. Plaintiff states that he is affiliated with Triad Advisors LLC ("Triad"). [Compl. ¶ 8.] Triad was a party to a "Selling Agreement" with the ON Contracting Defendants during the time period in which he has been associated with Triad. [Id.] The ON Contracting Defendants entered into Selling Agreements with many broker-dealers around the country in order to sell variable annuity products created by the ON Contracting Defendants, which included annuities with an available guaranteed minimum income benefit rider ("GMIB"). [Id. ¶¶ 7-22.] In exchange, the ON Contracting Defendants agreed to pay certain commissions ***to the broker-dealers***, which could take the form of "trail" commissions. [Id. ¶¶ 26-27.]

Plaintiff concedes that ***he was not a party to any Selling Agreement***, and that the ON Contracting Defendants' *only pertinent commitment* was to pay commissions ***to the broker-dealers*** that are parties to the Selling agreements. [Compl. ¶ 31.] In fact, the express terms of the actual Selling Agreement with Triad: (1) confirm that the ON Contracting Defendants' commitments to pay commissions (as governed by the terms of the commission supplements/schedules thereto) were made *only* to Triad; and (2) directly contradict any assertion

5

that Plaintiff was an intended third-party beneficiary of the Selling Agreement. [Doc. No. 10-1, PAGEID#92.] The Selling Agreement states that the only parties to the contract are the ON Contracting Defendants and Triad. It also states that all commissions owed are to be paid *to Triad* – not to registered representatives: "Commissions payable in connection with the Contracts ***shall be paid to BD***, or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement as they may be amended from time to time and in effect at the time the Contract Payments are received by ONL." [Id. § 9 (emphasis added).]

The Selling Agreement further explicitly states that the matter of compensation to be paid by Triad to *representatives* is to be governed by separate agreements *between them*: "Compensation to the BD's Representatives for Contracts solicited by the Representatives and issued by ONL will be governed by an agreement *between BD and its Representatives* and its payment ***will be the BD's responsibility*.**" [Id. (emphasis added).]

Nonetheless, Plaintiff contends that he is an intended third-party beneficiary of the Selling Agreement. He does so based on unremarkable language in the Selling Agreement noting that the actual sales of GMIB annuities would be conducted by licensed representatives of the broker-dealers, and requiring such broker-dealers to exercise oversight and supervision over their representatives in the sale of Ohio National's products. [Compl. ¶¶ 32, 34-35.] Plaintiff then asserts that he is entitled to recover trail commissions allegedly due and payable *to his broker-dealer* under the Selling Agreement.[2] [Id. ¶¶ 59-61.]

## III.           SPECIFIC OBJECTIONS TO THE R&R

**First Objection:  The R&R incorrectly denied the Motion to Dismiss, and further, incorrectly concludes that Plaintiff has standing as a third-party beneficiary of the Selling Agreement, where the express language of such agreement makes clear that**

---

[2]      Defendants, of course, dispute Plaintiff's proffered meaning of the substantive commission payment provisions in the Selling Agreement. But, that issue, based on the same selling agreement language, is currently pending before the Court in Veritas. It need not be resolved here.

it was entered neither directly nor primarily for Plaintiff's benefit, as required under Ohio law. Plaintiff lacks such standing, as a matter of law.

At the outset, the R&R is simply wrong in recommending that Plaintiff's claims for breach of contract and declaratory relief—premised entirely on Plaintiff's claimed third-party beneficiary status—should not be dismissed. Indeed, application of settled legal principles to the plain contractual language leaves no doubt that Plaintiff lacks the requisite third-party beneficiary standing to pursue ***any relief*** based on the Selling Agreement, as a matter of law. Although the R&R acknowledges this authority, it effectively refuses to apply it.

A. **The Selling Agreement's Plain Language Shows, As A Matter Of Law, That It Was Not Entered Into *Directly Or Primarily* For The Benefit Of Individual Representatives.**

1. **Dismissal Is Warranted Where, As Here, The Plain Language Of The Contract Does Not Evince An Intent To Directly Or Primarily Benefit The Alleged Third-Party Beneficiary.**

Under Ohio law, "[f]or a third-party beneficiary to be an intended beneficiary, the contract must have been entered into by the parties *directly or primarily* for the benefit of that person." <u>Westwinds</u>, 2009 Ohio App. LEXIS 2519, at *7.[3] A mere *incidental* beneficiary of a contract lacks standing to enforce it. <u>See</u>, <u>e.g.</u>, <u>Huff</u>, 130 Ohio St. 3d at 200; <u>Skaff v. Khutorsky</u>, 2016 Ohio App. LEXIS 2664, at *9-10 (6th Dist., July 8, 2016).

In deciding whether a person is a third-party beneficiary, "[c]ourts look ***to the language of a contract*** to determine whether the contract was made for the direct or incidental benefit of a third party." <u>Westwinds</u>, 2009 Ohio App. LEXIS 2519, at *7 (emphasis added). "[T]he intention [to benefit] must have *affirmatively appeared in the contract itself*." <u>Global Ground</u>

---

[3]    <u>See</u> <u>also</u> <u>Caruso v. Nat'l City Mortg. Co.</u>, 187 Ohio App. 3d 329, 335 (8th Dist. 2010) (same); <u>Sony Elecs. v. Grass Valley Group</u>, 2002 Ohio App. LEXIS 1304, at *13 (1st Dist., Mar. 22, 2002) (same); <u>Daley v. Fryer</u>, 2015 Ohio App. LEXIS 915, at *21 (3rd Dist., Mar. 16, 2015) ("for a person to claim intended third party beneficiary status, the contracting parties must have entered into the contract for the primary purpose of that person").

Support, LLC v. Glazer Enters., 581 F. Supp. 2d 669, 674 (E.D. Pa. 2008) (emphasis added). "The contract must 'clearly evince' an intent by the parties to permit enforcement by the third party." Iwachiw v. Travelers, 2015 U.S. Dist. LEXIS 125167, at *21 (E.D.N.Y., Aug. 14, 2015).[4]

Hence, a party's claim of third-party beneficiary status must be *rejected* "unless it clearly appears from [the instrument's] terms that it was intended that such party should be the beneficiary thereof." Norandex Inc v. Nat'l Credit Sys., Inc., 1982 Ohio App. LEXIS 15337, at *4, (8th Dist., May 20, 1982). Where such intent is lacking, dismissal of a putative third-party beneficiary's claim is compelled. See, e.g., Bentley Koepke, Inc. v. Jeffrey Allen Corp., 1998 Ohio App. LEXIS 684, at *1 (1st Dist., Feb. 27, 1998) (court affirmed Rule 12(b)(6) dismissal of contract claim where "the terms of the insurance contract issued to the contractor made it clear that the [plaintiff] was neither a party to the contract nor an intended beneficiary of the contract" and noting that "[n]owhere within the 'Insuring Agreement' did Midwestern agree to defend or indemnify parties who were not *insured* parties") (italics in original); Westwinds, 2009 Ohio App. LEXIS 2519, at *7-8 (granting judgment on the pleadings as to third-party beneficiary claim).

Indeed, ascertaining the meaning of contract language is, in the first instance, a legal question for the Court's resolution that is appropriately resolved on a Rule 12 motion.[5] On point

---

[4]      These rules are consistent with Restatement (Second) Contracts § 302, which merely recognizes the importance of the "intention" of the contracting parties and identifies the two types of intended third-party beneficiaries historically recognized at common law: creditor and donee beneficiaries. See Thorworks, 606 F. Supp. 2d at 695 ("In Ohio, only creditor or donee beneficiaries are intended third party beneficiaries with rights under a contract to which they are not party.").

[5]      Both Ohio and federal courts routinely grant motions to dismiss and/or motions for judgment on the pleadings where the plain language of the contract at issue is devoid of an intent to primarily or directly benefit the purported third-party beneficiary. See, e.g., Norandex, 1982 Ohio App. LEXIS 15337, at *4 (court granted judgment on the pleadings, finding that plain language of bond precluded existence of third-party beneficiary); Hitachi Med. Sys. Am. v. St. Louis Gynecology & Oncology, LLC, 2011 U.S. Dist. LEXIS 17022, at *28-30 (N.D.

is <u>Thorworks Indus. v. E.I. DuPont De Nemours & Co.</u>, 606 F. Supp. 2d 691 (N.D. Ohio 2008). There, the court ruled that a third party mentioned in an agreement was not a third-party beneficiary entitled to invoke the agreement's forum selection clause. In so holding, the court looked to the "plain language" of the contract in recognizing that:

> Mere identification of [of the purported third-party beneficiary], or clauses that provide benefits to [said party] do not indicate that the parties are performing the Agreement to fulfill an obligation to [that party] or gratuitously benefit [it]. Nor do these clauses demonstrate that DuPont and Thorworks entered into the Governing Agreement directly and with the primary purpose of benefitting [the purported third-party beneficiary].

> [<u>Id.</u> at 695-697 (emphasis added).]

The same result should attain here. What "*clearly appears*" from the plain language of the Selling Agreement is that: (1) the ON Contracting Defendants committed *only* to pay certain commissions, subject to terms of the commission schedules, *to and for the benefit of* **Triad**; and (2) any "compensation" to be paid to individual representatives was to be determined and paid ***solely by Triad*** under agreements ***separate*** from the Selling Agreement. This language evinces two clear points. First, ***Triad*** (not Plaintiff) was both the direct and primary beneficiary of the commissions to be paid under the Selling Agreement. Second, there is no contract language Plaintiff can cite showing that such payments were intended to directly or primarily benefit him. These points, alone, are dispositive of Plaintiff's lack of standing, and compel dismissal of—and rejection of the R&R's conclusions regarding—Plaintiff's contract claims.

---

Ohio, Feb. 22, 2011) (court held, at the pleading stage, that the "plain language" of contract at issue precluded a litigant from asserting third-party beneficiary status to enforce forum selection clause in contract); <u>Nixon v. Wilmington Trust Co.</u>, 2007 U.S. Dist. LEXIS 53931, *9-10 (N.D. Ohio, July 25, 2007) (court granted Rule 12(b)(6) dismissal of a party's claim that she was a third-party beneficiary of a trust instrument where the trust's express language evinced an intent that the trustee collect and distribute assets *solely to named beneficiaries*, not for the benefit of others – like the plaintiff); <u>Boynton v. Alacrity Servs.</u>, LLC, 2013 U.S. Dist. LEXIS 134884 (N.D. Ohio, Sept. 20, 2013) (court dismissed, on a Rule 12(b)(6) motion, a homeowner insured's claim that he was entitled to certain funds as a third-party beneficiary of a home repair contract between the insurance company's project manager and a contractor because the "plain language" of the agreement made clear that the alleged payment obligation at issue applied, by its express terms, ***only as between the project manager and the contractor***).

> **2.** **Contrary To The Magistrate Judge's Conclusion, The Fact That Triad Can Act Only Through Its Agents Affords Plaintiff With No Basis For Avoiding Dismissal Of The Complaint.**

Contrary to the Magistrate Judge's conclusion, the fact that the Selling Agreement acknowledges that a business entity, like Triad, can act only through its employees/agents—like Plaintiff—does not change this result. Indeed, courts across the country have consistently rejected the existence of third-party beneficiary standing in similar circumstances.

> **a.** **Third Parties, Like Plaintiff, Have No Standing To Claim A Right To Be Paid Commissions Based On A Contract That Is Silent On That Point Or Specifies That Such Payment Is A Subject For A Separate Agreement.**

*First*, in applying the above-described rules, courts have concluded that there is no intended third-party beneficiary standing to enforce an entitlement to commissions where a contract between two parties – such as the Selling Agreement – either does not contain an express term providing for commissions to be paid to the third party or contemplates that the right of any third party to receive any commission *is to be set forth in a separate agreement*.

On point is For Your Ease Only, Inc. v. Calgon Carbon Corp., 2009 U.S. Dist. LEXIS 93088 (N.D. Ill., Oct. 6, 2009). There, one company had an agreement with a second company to pay commissions on the second company's sales of certain products. The court held that the first company was not obligated to make commission payments to a third party based on third-party beneficiary theory, even though it knew the second company was using a portion of the commissions it received to compensate the third party for his related services under a separate arrangement. See id. at *9-11.

Likewise, in Halstead Prop. LLC v. Gluck, 9 Misc. 3d 1123(A); 862 N.Y.S.2d 808 (Table), 2005 N.Y. Misc. LEXIS 2405 (N.Y. Sup. Ct., June 30, 2005), the court held that a broker was not an intended third-party beneficiary of a sales contract between the buyer and

seller of real estate, observing that "[w]hile a clause in the sale contract that acknowledges a broker's services and states that the seller shall pay the broker's commission would normally entitle the broker to sue as a third party beneficiary, *the clause in question in this contract states that the seller will pay the commission pursuant to a separate agreement*." Id. at *5 (emphasis added).  The court in Halsted *specifically rejected* the plaintiff's motion for summary judgment in which it had asserted:  "as a result of the above cited clause in the contract for the sale of defendant's apartment, plaintiff *is a third party beneficiary to the contract of sale and is entitled to recover a commission from defendant*." Id. at *3 (emphasis added).

Similarly here, the Selling Agreement makes clear that the parties expressly intended to limit the obligation(s) of the ON Contracting Defendants to the payment of commissions *to Triad*, leaving the issue of payments to representatives as a subject for separate contracting, if any, between Triad and its representatives.

> **b.**   **A Contract Between Two Parties That Contemplates The Engagement Of Nonparties For The Benefit Of The Parties' Business Relationship Does Not Make The Nonparties Intended Third-Party Beneficiaries.**

*Second*, as a related point, courts also hold that where parties provide in their contract that third parties may be engaged to perform tasks beneficial to the contracting parties, such provisions do not endow third parties with enforceable rights under the main contract.

Instructive is Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119 (2nd Cir. 2005). There, plaintiff Subaru Distributors had a contract with Subaru of America, the importer of Subaru vehicles, giving plaintiff the exclusive right to act as a "sub-distributor" of Subaru vehicles, parts, etc., in a certain territory.  At issue was Subaru Distributors' attempt to enforce terms of a different contract – Subaru of America's contract with the manufacturer (Fuji Heavy Industries) – for its own benefit.  Subaru Distributors asserted that it could enforce the contract

as a third-party beneficiary based on a contract term that stated Subaru of America would appoint sub-distributors and dealers "to achieve an efficient sales network." The Second Circuit, however, affirmed dismissal of the claim. It held the fact that the contract between Fuji and Subaru of America "calls for Subaru [of America] to appoint sub-distributors does not, as a matter of law, make the sub-distributors intended beneficiaries," because the contract provisions, as here, "strongly suggest that the two parties to the contract intended the contract to concern and to benefit only themselves." Id. at 125.

Equally apposite is Artwear, Inc. v. Hughes, 202 A.D.2d 76, 615 N.Y.S.2d 689 (App. Div. 1994). There, Artwear sued to recover damages arising out of the refusal of the estate of Andy Warhol to approve any of its products for distribution and sale under a sublicensing agreement it had with a defendant licensee to act as sub-licensee in the manufacture and distribution of T-shirts depicting images created by Warhol. The court affirmed dismissal of the claim, explaining that "Artwear cannot … qualify for third-party beneficiary status since it is, at best, an incidental beneficiary of the license agreement, that is, a third party who, although neither the promisee nor the one to whom performance is to be rendered, may derive a benefit from the performance of a contract." Id. at 81. The court reasoned that, although the license agreement authorizes the licensee "to use sublicensees to carry out its contractual duties, the provisions permitting such use are obviously intended to effectuate [the licensee's] performance and thereby generate revenues for both [the licensee] and the estate. Any benefit to those selected as [the licensee's] sublicensees is an incidental by-product of the agreement." Id. at 82.[6]

As in the above cases, the Selling Agreement makes clear that the ON Contracting Defendants and Triad intended such agreement "to benefit only themselves," despite the fact that

---

[6]        Accord: Lippert Mktg. Ltd. v. Kingwood Ceramics, Inc., 1998 U.S. Dist. LEXIS 15913, at *66 (N.D. Ill., Oct. 5, 1998) (court held that a contract provision stating that plaintiff Lippert, a third party, "will manage and service" a particular account on behalf of defendant "does not vault Lippert into third-[party] beneficiary status").

the agreement contemplates, as a matter of common sense, that Triad would appoint and supervise representatives to assist in selling individual variable annuity products. Thus, at most, representatives like Plaintiff are incidental beneficiaries who have no right of enforcement.

> **c.  Contract Language Acknowledging That Triad Must Act Through And Supervise Its Agents Does Not Establish Third-Party Beneficiary Standing – Courts Have Uniformly Rejected Such An Argument.**

*Third*, case law makes clear that the Selling Agreement's unremarkable recognition of Triad's ability to perform services only through its individual agents/representatives is insufficient to vest such agents/representatives with third party beneficiary standing under the Selling Agreement. It is well settled (and a matter of common sense) that a business entity "can only act through its officers and agents." Kreller Group v. WFS Fin., Inc., 155 Ohio App. 3d 14, 29 (1st Dist. 2003). It is equally settled that a principal is obligated to be aware of and to reasonably supervise the actions of its agents. See, e.g., Wood v. Thomas, 1977 Ohio App. LEXIS 9213, at *5 (10th Dist., Feb. 8, 1977). Indeed, in the securities context, as here, the **_licensure_** and supervisory requirements described in the Selling Agreement essentially track the requirements of federal and state law, and the rules of the Financial Industry Regulatory Authority ("FINRA") imposed on the contracting broker-dealers, like Triad.

For example, federal law requires sales representatives who work for broker-dealers – referred to as "associated persons" or "registered representatives" – to be **_licensed_** and properly supervised by a broker-dealer registered with the Securities Exchange Commission and to individually register with a self-regulatory organization, such as FINRA, of which their broker-dealer is a member. *See* SEC Guide to Broker-Dealer Registration.[7] FINRA has detailed requirements for its members' registered representatives to be registered/licensed, examined,

---

[7]  Available at: https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html.

trained, and subject to continuing education requirements. *See*, *e.g.*, FINRA Rules 1210, 1220 & 1240. Also, FINRA Rule 3110 contains detailed requirements for broker-dealers to maintain a system to supervise the activities of their associated persons "that is reasonably designed to achieve compliance with applicable securities laws and regulations and FINRA rules."

The R&R, however, would to turn the Selling Agreement's acknowledgment of these propositions, and the requirements applicable to all broker-dealers, into a blanket rule meaning that <u>all</u> employees or agents are third-party beneficiaries of contracts entered into by their employer/principal, simply because they stand to ultimately benefit – in the form of compensation to be paid ***by the employer/principal*** – from the revenues generated ***by the employer/principal***. That is untenable, and no court has so held.

Just the opposite is true: All courts that have addressed similar arguments, including the Supreme Courts of two states, have squarely rejected them. For example, in <u>Joseph</u>, 939 So. 2d 1206 at 1211-12, the Louisiana Supreme Court held that even though a medical corporation could provide actual medical services only through its individual doctors, such doctors did not qualify as third-party beneficiaries of the corporation's contract with a hospital. It did so even though the agreement acknowledged that the physicians providing services had to be properly licensed and were required to comply with the terms and conditions of the agreement. <u>Id.</u> at 1209-10, 1213-15.

In so holding, the <u>Joseph</u> court emphasized that the agreement—like the Selling Agreement—expressly stated that the doctors were *not to be paid by the hospital*:

> Ultimately, we find there is no benefit in the contract flowing directly to the doctors such that a benefit was stipulated in their favor. ***While the contract imposed certain obligations on the doctors regarding their qualifications***, *there was no benefit provided in the contract directly to the doctors that they could demand from the Hospital*. ***The doctors were not to be paid by the Hospital***. ***The doctors were not hired by the Hospital***. The doctors had no right to demand

employment by the Hospital. In fact, the contract specifically provided there was no intent to create an employer/employee relationship between the parties. Based on our review of the contract, there is no obligation owed by the Hospital to the individual doctors which will be discharged by performance of the contract _because the contract provides **no direct benefit to the doctors**_.

While the doctors can perform the services to satisfy the contractual obligations of the corporation, there are no direct benefits flowing to the plaintiff doctors. Simply stated, in the absence of a direct benefit conferred by the contract, the doctors cannot be third party beneficiaries … .

A person may derive a benefit from a contract to which he is not a party without being a third party beneficiary. _In this case, any benefit created by the contract in favor of the doctors was only incidental to their employment with SMAA_.

              \*        \*        \*

Not every breach of a contract with a corporation provides a cause of action to the employees or shareholders of that corporation. _**In essence, the court of appeal decision created an implied right of action for employees of [business] entities to contest any contract between the employing corporation and another entity if any benefit flowed to the employee**_. …

              \*        \*        \*

… The doctors urge us to ignore the corporate status of SMAA because a medical corporation can only act through a physician. We refuse to do so. As a legal fiction, all corporations act through individuals. Dr. Joseph chose to establish a medical corporation. This separate juridical entity cannot be disregarded. …. _**The breach of contract claim is a claim to be asserted by the corporation, not the employees, officers or shareholders of the corporation**_.

[Id. at 1213-15 (emphasis added).]

Equally apposite is Caldas, _supra_.  There, the Supreme Court of Minnesota found that employees of a contractor were not entitled to enforce, as third-party beneficiaries, the "prevailing wage" provision contained in a contract between their employer and a municipality. Applying the plain language of the agreement and Section 302 of the Restatement (Second) of Contracts, the court held that the agreement manifested an intent to vest enforceable rights _**only**_

in the city and not with the individual employees who would actually receive the wages. <u>Caldas</u>, 820 N.W. 2d 826.

The same is true here. To be sure, Triad, like any other business entity, could perform its obligations under the Selling Agreement only through its agents, including individual representatives like Plaintiff. Further, such representatives or agents stood to potentially benefit from the revenues Triad generated under the Selling Agreement through the payment of "compensation" ***<u>determined and paid by Triad under separate agreements</u>***. But such incidental benefits are insufficient, as a matter of law, to make Plaintiff (or any other Triad representative) a third-party beneficiary of the Selling Agreement.

### 3. The Dictum Found In A Footnote In The <u>Commonwealth</u> Decision Does Not Save The Complaint From Dismissal.

At bottom, the Magistrate Judge's ultimate conclusion regarding Plaintiff's standing as a third-party beneficiary is derived from *<u>dictum</u>* contained in a *<u>footnote</u>* in a recent order regarding an issue of arbitrability another case involving Ohio National. <u>Commonwealth Equity Services, LLC v. Ohio Nat'l Life Ins. Co.</u>, 2019 U.S. Dist. LEXIS 57064, at *13 n.3 (D. Mass., Apr. 3, 2019). Such dictum from a district court in another circuit is clearly irrelevant and should be rejected as a basis for denying dismissal of the Complaint here.

Indeed, the cited decision merely addressed, in passing with no analysis, a non-signatory's ability to *<u>compel arbitration</u>*. Hence, the cited dictum—which even the <u>Commonwealth</u> court identified as an *<u>alternative</u>* ground for compelling arbitration as to the individual—was driven by the federal policy favoring arbitration. <u>Id.</u> That policy has no application to the issues presented here: Plaintiff is not a payee under the Selling Agreement.

In short, <u>Commonwealth</u> does not support the contention that an individual representative has standing to sue for commissions that can only be paid to his or her broker-dealer(s)—

16

particularly where, as here, a putative class action involving such broker-dealers already exists. Nor does it support the Magistrate Judge's rejection and/or misapplication of Ohio law clearly mandating dismissal of Plaintiff's contract claims.

> **Second Objection: The R&R incorrectly concludes that Plaintiff has alleged a viable "alternative" claim for unjust enrichment. Where the subject of an unjust enrichment claim is covered by an express contract, the existence of which is undisputed, such claim fails as a matter of law even if the plaintiff lacks standing to enforce the contract. That is the case here, and the unjust enrichment claim should be dismissed.**

The R&R also incorrectly concludes that Plaintiff is entitled to pursue an "alternative" claim for "unjust enrichment" that is based on the same factual predicate as Plaintiff's contract claims – *i.e.*, the ON Contracting Defendants' failure to pay commissions allegedly owed to Triad under the Selling Agreement. Indeed, on its face, such claim is simply a transparent attempt to impermissibly circumvent the lack of third-party beneficiary standing.

Ohio law is clear that no claim on unjust enrichment theory lies for recovery of amounts allegedly owed under an express contract. See, e.g., Weiper v. W.A. Hill & Assoc., 104 Ohio App. 3d 250, 262 (1st Dist. 1995) ("[A] party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment.") (citing Ullman v. May, 147 Ohio St. 468 (Syll. ¶ 4) (1947)). Unjust enrichment relies on a theory of quasi-contract, or contracts implied in law, and it has no application if an express contract exists and contains the terms under which the alleged benefit is sought. See Baer v. Woodruff, 111 Ohio App. 3d 617, 620 (10th Dist. 1996) (rejecting unjust enrichment recovery where plaintiff had an express contract with defendant).

While acknowledging these basic propositions, the R&R conflates two distinct scenarios: *where the existence of a contract is disputed* vs. *where contract existence is undisputed* and the issue is one of applicability. Where the *existence* of an express agreement covering the subject at issue is *undisputed*, a party cannot assert an "alternative" unjust enrichment claim based on that

17

subject even though he is unable to directly enforce the contract against the defendant, whether due to a lack of third-party beneficiary standing or otherwise.

Hence, where the ***existence*** of an express agreement covering the subject at issue is ***undisputed***, a party cannot assert an "alternative" unjust enrichment claim based on that subject even though he is unable to directly enforce the contract against the defendant, whether due to a lack of third-party beneficiary standing or otherwise. See, e.g., Ford, 2018 U.S. Dist. LEXIS 44549, at *19-23 (N.D. Ohio, Mar. 19, 2018); Abbott Labs. v. Adelphia Supply USA, 2017 U.S. Dist. LEXIS 1007, at *41 (E.D.N.Y., Jan. 4, 2017) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").[8]

In Ford, a putative class of teachers filed an "unjust enrichment" claim against a third-party processor of grants issued by the U.S. Department of Education ("DOE"). Ford, 2018 U.S. Dist. LEXIS 44549, at *2-6. Such funds were to be paid by the DOE under "Agreements to Serve" executed between the teachers and the government. Id. The DOE separately contracted with a third-party servicer to administer and process the grant program, consistent with terms of the Agreements to Serve. Id. The processor was not a party to the Agreements to Serve. Id.

In their unjust enrichment claim, the teachers sought to hold the third-party processor liable for failing to properly administer the grants by, *inter alia*, converting grants to loans in violation of the terms of the Agreements to Serve. Id. at *19-20. The teachers alleged that this conduct resulted in increased profits to the processor based on loan and interest payments that would not have been required had the conversion not occurred. Id. The Ford court dismissed the unjust enrichment claim because the subject matter was covered by an express contract – *i.e.*, the

---

[8]      See also Iwachiw, 2015 U.S. Dist. LEXIS 125167, at *22-23 (court dismissed, on a Rule 12(c) motion, plaintiff's claim for unjust enrichment against insurance company based on flood damage where he was not a named insured, and hence, not a party to insurance agreement, because claim ***duplicated*** a breach of contract claim against the insurer as to which plaintiff lacked third-party beneficiary standing).

Agreements to Serve – even though the teachers could not directly enforce such agreements against the servicer. In so holding, the court recognized that:

> Ohio law does not allow parties to seek damages under quasi-contractual theories of recovery, such as a claim of unjust enrichment, when a contract governs the relationship. A claim for unjust enrichment may be pled in the alternative, however, ***when the existence of an express contract is in dispute*** and may also be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality.
>
> As set forth above, plaintiffs have failed to allege a scheme to defraud. Moreover, PHEAA notes that plaintiffs do not allege that the Agreement to Serve is invalid and, in fact, rely on its enforceability to support their breach of contract claim against the DOE. Further, PHEAA does not challenge the enforceability of either contract, and, indeed, ***relies on the related Administration Agreement to defend its actions***. …
>
> … In fact, plaintiffs make clear that their injury flows from "PHEAA's improper conduct in breaching the contract ... due to the improper conversion of the TEACH Grant[.]" Plaintiffs' breach of contract and unjust enrichment claims ***both rely on the same conduct: namely, PHEAA's conversion of the federal grants to loans***. Both claims are also dependent on the existence and validity of the Agreement to Serve. ***Therefore, plaintiffs have failed to allege sufficient facts to support an unjust enrichment claim to be pled in the alternative***.

[Id. at *20-22 (emphasis added).]

Also on point is Caldas, *supra*. There, after rejecting the plaintiffs' attempt to proceed under a third-party beneficiary theory, the court also rejected their attempt to pursue relief on the same subject via an alternative claim for unjust enrichment:

> … In this case, appellants' unjust enrichment claim is predicated on the theory that they have a right to be classified as terrazzo mechanics at the corresponding pay rate of $44.31 per hour. For this proposition, they rely on the prevailing wage certificate in the contract between AGS and the City, ***to which they are only incidental third-party beneficiaries with no rights of enforcement***.
>
> ***We conclude that because appellants are not intended third-party beneficiaries of the contract, their unjust enrichment claim is not legally supportable. Essentially, appellants are attempting to bring an unjust enrichment claim to avoid the result that they lack third-party***

19

> ***beneficiary status to enforce the contract***.    Previously, we have not
> extended the theory of unjust enrichment to allow an incidental third-party
> beneficiary to enforce a contract, and we decline to do so in this case.
> Accordingly, we hold that appellants' unjust enrichment claim fails as a
> matter of law.
>
> [820 N.W.2d at 838-39.][9]

So, too, here.  Plaintiff's unjust enrichment claim is premised upon his allegations that:

(1) the ON Contracting Defendants *are required to pay trail commissions*; and (2) that, in

stopping such payments, the ON Contracting Defendants retained the benefit thereof.  [Compl.

¶¶ 33, 65-66.]  To the extent the ON Contracting Defendants are actually required to pay such

trail commissions ***to Triad***, such requirement is imposed ***only by the terms of the Selling***

***Agreement*** – the existence and validity of which (but not the meaning of) are undisputed.  As a

result, just as in Ford and Caldas, Plaintiff's unjust enrichment claim is based on a subject that is

covered by the terms of the Selling Agreement.  Such a claim cannot be pled in the alternative

and the R&R's conclusion to the contrary must be rejected.

**IV.**                                            **CONCLUSION**

For the reasons set forth above, the R&R is contrary to law. It should be rejected, and the

Complaint should be dismissed in its entirety.

---

[9]        The cases cited by the Magistrate Judge are not to the contrary.  Indeed, they actually support dismissal here.  For example, the court in Baumgardner v. Bimbo Food Bakeries Distrib., 697 F. Supp. 2d 801, 816 (N.D. Ohio 2010), recognized that alternative pleading of an unjust enrichment claim is not permitted where there is no dispute as to the existence of an express contract that "explicitly cover[s]" the matter in dispute.   The other cited decisions, Kabealo v. J.E. Grote Co., 1994 Ohio App. LEXIS 3423 (10th Dist., Aug. 9, 1994), and Bihn v. Fifth Third Mortg. Co., 980 F. Supp. 2d 892 (S.D. Ohio 2013), both addressed circumstances where the existence of an underlying contract was in dispute.  They are, thus, inapposite here

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr.    (0042679)
Trial Attorney
Christopher J. Hogan   (0079829)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-9900
(Fax) (614) 365-7900
little@litohio.com
hogan@litohio.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 12, 2019, a copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all counsel of record to this action

/s/ Marion H. Little, Jr.
Marion H. Little, Jr.    (0042679)

414-033:820543