# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| STEPHEN COOK, | : | |
| **Individually and on Behalf of** | : | Case No. 1:19-cv-195 |
| **All Others Similarly Situated** | : | |
| | : | Judge Susan J. Dlott |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE OHIO NATIONAL LIFE | : | |
| INSURANCE COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF STEPHEN COOK'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Doc. 32)**

## I. INTRODUCTION

Magistrate Judge Stephanie K. Bowman's Report and Recommendation ("R&R") recommends denial of Ohio National's motion to dismiss. (Doc. 26, R&R). Defendants The Ohio National Life Insurance Company, Ohio National Life Assurance Company, Ohio National Equities, Inc., and Ohio National Financial Services, Inc., (collectively "Ohio National") have filed three objections to the R&R. The "objections" simply repeat—often word for word—failed arguments found in Ohio National's initial briefing on the motion. (*Compare* Doc. 32, Objections *with* Doc. 10, Defs. Motion to Dismiss). Magistrate Judge Bowman considered and rejected all of these arguments after full briefing and extensive oral argument (Doc. 20, Minute Entry). Ohio National's repackaged "objections" are improper and meritless. This Court should adopt the R&R in full because Magistrate Judge Bowman committed no error and reached the proper conclusion.

## II.  OVERVIEW

### A.  Ohio National Breached Its Promise to Pay Trail Commissions

This class action is a simple breach-of-contract case whereby Ohio National unilaterally and unexpectedly decided to stop paying sales commissions earned by Plaintiff Cook and thousands of other individual sales representatives on past sales of Ohio National's annuity products. (Doc. 1, Compl. at PageID 1–20). Ohio National agreed to pay such commissions pursuant to Selling Agreements that Ohio National signed with myriad broker-dealers throughout the country. Due to the highly regulated field of securities and annuity sales, these Selling Agreements required the broker-dealers to use properly licensed and authorized sales representatives, such as Plaintiff Cook and the putative class he represents, to sell Ohio National's products. *Id*. These Selling Agreements not only set the commissions to be paid (which the representatives could select), but also established all manner of rights and duties of the sales representatives. *Id*. In sum and substance, the Selling Agreements are almost entirely about the work to be done by representatives. As a result, the harm done by Ohio National's decision to stop paying sales commissions is endured almost entirely by the representatives.

### B.  Ohio National's Failed Attempts to Challenge Representatives' Standing

Ohio National has challenged representatives' legal standing to sue them three times to date, and has been unsuccessful each time. Magistrate Judge Bowman rejected Ohio National's arguments in this case and in the related case pending in this Court—*Browning v. The Ohio National Life Insurance Co., et al.*, Case No. 1:18-cv-769-SJD. A District Judge in Massachusetts applying Ohio law rejected an identical challenge by Ohio National involving an identical selling agreement and identical language in yet another related case. *Benison, et al. v. The Ohio National Life Insurance Co., et al.*, No. 1:18-cv-12314-DJC, 2019 WL 1470131 (D.

Mass. April 3, 2019).[1] Both Judges correctly concluded that representatives have standing to challenge Ohio National's termination of the commissions the representatives earned and were promised. Such holdings are hardly surprising given that the sole contract (the Selling Agreement) which Ohio National says gives no standing to Plaintiff Cook references him by his position as a "Representative" more than 24 times, and without his participation no Ohio National annuities could be sold.

### C. Ohio National's Objections Misstate Law and Fact

Contrary to Federal Rule of Civil Procedure 72's requirements, Ohio National's "objections" do not identify any "**specific**" error. Instead, Ohio National simply disagrees with the R&R's conclusion, labeling it "contrary to law and common sense." (Doc. 28, Defs. Motion for Status Conference, PageID 272, 273). But it is actually Ohio National that misconstrues both law and fact in seeking to dismiss this case.

*First*, Ohio National misstates Ohio law regarding identification of third-party beneficiaries to a contract. Even though both the Ohio Supreme Court and the Sixth Circuit Court of Appeals have ruled on Ohio's third-party beneficiary law, Ohio National never applies the test articulated by those Courts or even bothers to cite such binding precedent.

Ohio applies the "intent to benefit" test. *Hill v. Sonitrol of Sw. Ohio*, 36 Ohio St. 3d 36, 521 N.E.2d 780, 784–85 (Ohio 1988) (citing *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980)). Under that test, if the **promisee** (here, the broker-dealers with whom Ohio National signed the Selling Agreements at issue in this class action) intends for a third party (here, the sales representatives) to benefit, then these third parties can sue for breach of contract.

---

[1] Ohio National derisively refers to the *Benison* ruling as irrelevant dicta from another Circuit. (Doc. 32 at PageID 308). But Ohio National neglects to inform this Court that it challenged the representative's standing in that case, claimed that Ohio law supported its position, and thus forced the Massachusetts Court to consider—and reject—the identical arguments it now makes.

*See id.* The broker-dealers' intention for representatives to benefit is easily discernable from the Selling Agreement. That agreement outlines the process for allocating commissions to representatives, allows representatives to select the type of commissions, and ultimately promises that payment of the "Representative's commissions" will be the responsibility of the broker-dealer. (*See* Doc. 10-1, Selling Agreement at ¶ 9, PageID 92; *see, e.g.*, *id* at PageID 109). If representatives were not meant to benefit from the sales that are the subject of the Selling Agreement, these provisions would have been unnecessary and Ohio National never would have sold a variable annuity.

*Second*, Ohio National misstates the well-pled facts. Ohio National takes the remarkable position that sales representatives—the indispensable individuals who undergo extensive burdens to be educated, licensed, registered, and appointed to sell variable annuities—are not necessarily entitled to anything for soliciting, selling, and then servicing the annuities. The opposite is true. Representatives sold annuities based on the promise of being paid commissions.

Ignoring this reality, Ohio National claims that the commissions required by the Selling Agreement are only for the benefit of the broker-dealer. (Doc. 32, Objection at PageID 294). This is demonstrably untrue. Plaintiff Cook pled that he and thousands of other representatives sold Ohio National's variable annuities and had received trail commissions up until December 2018 when Ohio National simply terminated the commissions and pocketed the commission fees for itself. (Doc. 1, Compl. at ¶¶ 5, 19–20, 26, 36–40, 44).

This process for paying commissions was by necessary design. Ohio National did not pay commissions directly to the representatives because Ohio National was **prohibited** under applicable Financial Industry Regulatory Authority (FINRA) rules from paying any commissions directly to representatives. *See* FINRA Rule 2320(g)(1) ("[N]o associated person of a [FINRA]

member shall accept any compensation from anyone other than the member with which the person is associated."). Ohio National **needed** to pay commissions to sales representatives **through** the broker-dealers. In short, Representatives earned and are owed commissions, but have not been paid because of Ohio National.

### III.  ARGUMENT

**A.     Ohio National Waived its Objections and Forfeited De Novo Review**

When objections are filed on a magistrate's decision, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended decision; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*  But de novo review is not required here.

An objection that is not "specific" is improper and is not afforded de novo review. *Martin v. E.W. Scripps Co.*, No. 1:12CV844, 2013 WL 5876172, at *2 (S.D. Ohio Oct. 30, 2013). Rule 72 requires that:

> Each objection to the magistrate judge's recommendation should include how the analysis is wrong, why it was wrong and how de novo review will obtain a different result on that particular issue. Merely restating arguments previously presented, stating a disagreement with a magistrate judge's suggested resolution, or simply summarizing what has been presented before is not a specific objection that alerts the district court to the alleged errors on the part of the magistrate judge.

*Id.* (citations omitted).

Ohio National purports to make three objections to the R&R, but only two objections are actually briefed. (*See* Doc. 32 at PageID 298–312). The two objections do not detail "how" or "why" the Magistrate's analysis is wrong. Instead, they just restate prior arguments considered by the Magistrate. In fact, whole portions of the memorandum supporting the objections are

- 5 -

taken verbatim from the motion to dismiss. (*Compare* Doc. 10 at PageID 73–87 *with* Doc. 32 at PageID 298–312). As such, Ohio National's objections are nothing more than an improper effort to make this Court perform a general review of the entire motion to dismiss—duplicating Magistrate Judge Bowman's work. De novo review of such "objections" would produce a "duplication of time and effort [that] wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Martin* at *2 (quoting *Howard v. Sec'y of HHS*, 932 F.2d 505, 509 (6th Cir. 1991). Under the circumstances, the Court's review should be limited to whether a clear error has been made.

**B.     The R&R Correctly Recommends Denial of the Motion to Dismiss**

Even should the Court afford Ohio National's objections de novo review, they should be overruled as meritless. Magistrate Judge Bowman's R&R correctly articulated the facts and law, and carefully considered the respective positions and cited authority of each party before reaching a reasoned conclusion. (*See* Doc. 26 at PageID 246–56).

As to the breach-of-contract claim, Magistrate Judge Bowman was persuaded by an identical case against Ohio National: *Benison*, No. 1:18-cv-12314, 2019 WL 1470131 (D. Mass. April 3, 2019). As Magistrate Judge Bowman recognized, *Benison* "involved the same Ohio National standard form selling agreement, same defendants, and same standing argument that Ohio National presents here." (Doc. 26, R&R at PageID 254). Ohio National argued to avoid arbitration by in part claiming that under Ohio law, Plaintiff Benison, another sales representative, was not an intended third-party beneficiary to the Selling Agreement. *Id.* at PageID 254–55. The *Benison* Court considered the identical arguments made by Ohio National in this case and rejected them. Magistrate Judge Bowman found *Benison* directly on point and persuasive "based on the analysis [in the case], consideration of Ohio law, and the factual

similarities in *Benison* and the instant action." (Doc. 26, R&R at PageID 255). Relying on precedent—especially a precedent invited and created by Ohio National—is hardly legal error.

As to the unjust enrichment claim, Magistrate Judge Bowman acknowledged the obvious fact (ignored by Ohio National) that Plaintiff Cook is not attempting to recover the same damages for both breach of contract and unjust enrichment. *Id.* at PageID 256. Magistrate Judge Bowman simply noted that the issue of what damages may be recovered is different than the issue of what claims may be pled. *See id.* It is black-letter law that unjust enrichment may be pled alternatively to breach of contract, and Magistrate Judge Bowman reached a result in accord with the Federal Rules of Civil Procedure and the holdings of numerous courts. *See* Section III.B.2, *infra*.

Magistrate Judge Bowman's R&R is legally correct: The Complaint demonstrates that the promisees (the broker-dealers) intended by the Selling Agreement to pay sales representatives trail commissions they earned, which necessarily affords the representatives standing under Ohio law to bring breach-of-contract and declaratory judgment claims. *See Hill*, 521 N.E.2d at 784–85 (citing *Norfolk & W. Co.*, 641 F.2d at 1208). But even if sales representatives are not third-party beneficiaries, then the Selling Agreement does not encompass the representatives' losses and representatives have standing (and Plaintiff Cook pled sufficient allegations) to pursue unjust enrichment alternatively. Outright dismissal, as Ohio National advocates, is not a possibility. The "objections" should be overruled.[2]

---

[2] Because Ohio National's objections are merely a relabeled, cut and paste of its earlier briefing, Plaintiff Cook incorporates all arguments in opposition to the objections that were previously made in opposition to the Motion to Dismiss. (*See* Doc. 16, Pl.'s Opp.).

### 1. Representatives Have Standing for a Breach of Contract Claim

Magistrate Judge Bowman determined that financial representatives are intended third-party beneficiaries of Ohio National's form Selling Agreement, and therefore can bring a breach-of-contract claim. (Doc. 26 at PageID 247–55). This conclusion is compelled by Ohio law.[3]

Resolution of the third-party beneficiary determination is simple. Under Ohio's "intent to benefit" test, the promisee (broker-dealer) intended for representatives to benefit from the Selling Agreement, so Plaintiff Cook (and his class of representatives) has standing to sue for breach of contract. *See Hill*, 521 N.E.2d at 784–85 (citing *Norfolk & W. Co.*, 641 F.2d at 1208). Here, the broker-dealer is the promisee because Ohio National promised to pay it commissions. (Doc. 1, Compl. at ¶¶ 26–27; Doc. 32, Objection at PageID 293–94, 297). In turn, by the terms of the Selling Agreement itself, the broker-dealer **intended** to pay the commissions to representatives and **intended** that payment of the commissions to the representatives would be its responsibility. (Doc. 10-1, Selling Agreement at PageID 92) ("Compensation to the BD's Representatives for Contracts solicited by the Representatives and issued by ONL will be governed by an agreement between BD and its Representatives and its payment will be the BD's responsibility."). The Selling Agreement even uses the term "Representatives' commissions"—explicitly showing that representatives are intended to receive the commissions. *Id.* at ¶ 9, PageID 92. Also in the Selling Agreement, the broker-dealer allowed representatives to select the type of commissions they wanted to receive. (*See, e.g.*, Doc. 10-1 at PageID 109) ("[Broker-dealer] allows Registered Representative to choose from the following options:"). And the broker-dealer negotiated

---

[3] Ohio National acknowledges that Ohio law controls, but the objections primarily rely on non-Ohio cases and ignore the binding Ohio Supreme Court and Sixth Circuit precedent. (*See, e.g.*, Doc. 32 at PageID 302–04). Ohio National also does not cite a single case involving the contract language at issue here, or even one that involves the highly regulated situation of financial representatives selling variable annuities.

another benefit to allow representatives (and family) to purchase no-fee annuities for themselves—an additional incentive to sell variable annuities. *Id.* at PageID 114. These provisions all demonstrate that the broker-dealer—and even Ohio National as well (although unnecessary)—intended for representatives to benefit from the Selling Agreement. That is all that is necessary for the representatives to have third-party standing. Magistrate Judge Bowman and the District Judge in *Benison* appropriately reached that conclusion. (Doc. 26, R&R at PageID 255 (citing *Benison*, 2019 WL 1470131 at *5 n.3) ("The circumstances of the Selling Agreement also indicate that 'the **promisee** intends to give the beneficiary the benefit of the promised performance[.]'") (internal citation omitted) (emphasis added)).

That the representatives are intended to benefit from the Selling Agreement is plain from a simple review of its terms. The representatives are indispensable parties to the Selling Agreement. (*See* Doc. 26, R&R at PageID 254 ("Triad is required by law to sell the Ohio National variable annuities only through the representatives.")). Because Ohio National's annuities qualify as both regulated securities and insurance policies, they can only be sold by properly licensed representatives. *See* 17 C.F.R. § 240.15b7-1; *Nat'l Ass'n for Fixed Annuities v. Perez*, 217 F. Supp. 3d 1, 8 (D.D.C. 2016) ("For purposes of the Securities Act of 1933, a variable annuity is both an insurance product and a security.") (citing *SEC v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 69–71 (1959)). As they are indispensable, the Selling Agreement is devoted almost entirely to the representatives. "Representatives" is a capitalized term in the Selling Agreement that appears on all four pages of the main contract and is used more than two dozen times, appearing in the recitals and paragraphs 4, 5, 7, 9, 16, 17, and 23. (*See* Doc. 10-1 at PageID 91–94; *see also* Compl., Doc. 1 ¶¶ 25, 31–35):

- The preamble to the Selling Agreement states: "Whereas, [Ohio National] propose[s] to have [broker-dealer's] registered representatives ("Representatives") who are, or will

become, duly licensed insurance agents, solicit sales of the Contracts[.]" (Doc. 10-1 at PageID 91).

- Paragraph 4 is devoted to the licensing and appointment of representatives, and requires that the "[broker-dealer] shall assist [Ohio National] in the licensing and/or appointment of Representatives under applicable insurance laws to sell the Contracts (see attached General Letter of recommendation)." *Id.* at PageID 91–92.

- Paragraph 4 requires Triad to execute a "General Letter of recommendation" to certify that the identified representative is "of good moral character, financially responsible, trustworthy and qualified to act as [Ohio National's] agent." *Id.* at PageID 91, 100–101.

- Paragraph 4 further allowed Ohio National the right to refuse the appointment of any sales representative or to terminate them. *Id.* at PageID 91.

- Paragraph 5 is devoted solely to supervision of the representatives. That paragraph requires Triad to have "full responsibility for training and supervision of all Representatives who are engaged directly or indirectly in the offer or sale of the [annuity] Contracts . . . ." *Id.* at PageID 92.

- Paragraph 5 contemplates that sales representatives will: (1) be registered representatives of Triad; (2) will qualify under applicable federal and state laws to sell annuities; (3) will be trained in the sale of annuities; and (4) will limit solicitations for the annuities to only jurisdictions where Ohio National has authorized it. *Id.*

- Paragraph 5 and 6 required representatives to use only Ohio National-approved sales promotion and advertising materials. *Id.*

- Paragraph 7 recognizes that annuity contracts issued on accepted applications may be forwarded *directly* to representatives for delivery to the customer. *See id.*

- Paragraph 9 required commissions on the sale of annuities to be paid according to the "Commission Schedule(s)" in effect at the time of the annuity contract payments to Ohio National. *Id.* The commission schedules specifically allowed for "Registered Representative[s] to choose from [commission options]." *See, e.g.*, *id.* at PageID 109.

- Paragraph 9 also required Triad to execute a separate contract with its representatives to govern the payment of commissions, and uses the term "Representatives' commissions"—clearly recognizing the intended beneficiary of the payments. *Id.* at PageID 92.

- Ohio National exerted control over that separate contract by prohibiting Triad from paying any compensation to sales representatives "until such Representative is authorized to receive such compensation under applicable state law." *Id.*

- Paragraph 11 is entitled "ADDITIONAL PARTY TO THIS AGREEMENT" and says "All references to [broker-dealer] in this Agreement shall include any affiliated entity." *Id.* at PageID 93. Affiliated entity is not defined in the contract, but sales representatives certainly are in a relationship with the broker-dealer which could lead to the conclusion they are an affiliated entity.

- Paragraph 16 identifies the sales representatives as independent contractors. *Id.*

- Paragraph 23 places additional obligations on representatives in how they generally conduct themselves, including that they cannot act in any manner prejudicial to Ohio National. *Id.* at PageID 94.

Representatives only perform all of the demands imposed on them in the Selling Agreement in exchange for commissions—that is how their profession operates.

Ohio National has never disputed that broker-dealers intended for representatives to benefit from the Selling Agreement. Instead, Ohio National ignores Ohio law and focuses on its own self-serving and supposed "intent" that only broker-dealers were meant to benefit. (Doc. 32 at PageID 294–95). But Ohio National's intent—as the promisor—simply does not matter.

Moreover, the mere fact that Ohio National did not pay the commissions directly to the representatives does **not** mean that the commissions did not belong to them. The commissions were earned and owed to the representatives, even if it was the broker-dealer that ultimately wrote the check. Under FINRA rules, Ohio National was **prohibited** from paying any commissions directly to representatives. *See* FINRA Rule 2320(g). In other words, the only way representatives could be paid is through the broker-dealer as an intermediary.

Ohio National also argues that the R&R will open the "floodgates" to somehow allow all "employee/agents" the right to sue their "employer/principal" as third-party beneficiaries of some unidentified contracts. (Doc. 32, Objection at PageID 295–96).[4] This assertion is

---

[4] This is a particularly ironic argument since Ohio National's decision to withhold the earned commissions of thousands of sales representatives has already resulted in a dozen lawsuits filed against Ohio National throughout the country.

unfounded and essentially ignores the governing legal analysis. Under Ohio law, a third party only has rights under a contract if that is what was intended by the promisee, and such a determination requires detailed review of each contract itself.

This is precisely why Magistrate Judge Bowman's decision could have no broad applicability to every "employer/principal" relationship. Instead, the decision relies on the unique language of the Selling Agreements in this case that permit financial representatives to sell and service variable annuities. Representatives are not employees, they are independent contractors. (Doc. 10-1, Selling Agreement at ¶ 16, PageID 93). And representatives are not lawyers, doctors, or grocery store clerks (as Ohio National described them at oral argument). Representatives must be dually licensed as registered securities advisors and insurance agents to sell variable annuities. They are unique financial professionals that operate in two heavily regulated industries (securities and insurance). As a result, the Selling Agreement's arrangement between insurance company, broker-dealer, and financial representative is also unique—a result of the specific rules applicable to variable annuity sales. Accordingly, Magistrate Judge Bowman's decision has limited application.

In short, the only "floodgate" opened is for all commission-deprived sales representatives to pursue Ohio National. Such result is a problem of Ohio National's own creation.

### 2. Representatives Have an Alternative Unjust Enrichment Claim

Magistrate Judge Bowman also determined that financial representatives can plead an unjust enrichment claim in the alternative. (Doc. 26 at PageID 256). This is black-letter law. Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

Ohio National does not challenge that the facts pled by Plaintiff Cook support an unjust enrichment claim. Instead, Ohio National's lone argument for dismissing the unjust enrichment claim is to ignore the concept of alternative pleading. For Ohio National, because the Selling Agreement indisputably exists, representatives cannot assert an "alternative" unjust enrichment claim **even if** the sales representatives are found to lack standing to pursue a breach-of-contract claim. (Doc. 32, Objection at PageID 296). This argument fails.

*First*, Ohio National confuses an issue of damages with pleading standards. The actual rule is that a party cannot **recover** the same damages under both theories, although it is perfectly permissible to **plead** such alternative theories. *See, e.g.*, *Teknol, Inc. v. Buechel*, No. C-3-98-416, 1999 WL 33117391, at *2–3 (S.D. Ohio Aug. 9, 1999); *Tunnell Hill Reclamation, LLC v. Endurance Am., Specialty Ins. Co.*, No. 2:15-CV-2720, 2016 WL 3689100, at *6 (S.D. Ohio July 12, 2016); *Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting GmbH*, No. 1:05-CV-00702, 2006 WL 2924779, at *2–3 (S.D. Ohio Oct. 10, 2006); *United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107, 112–13 (S.D. Ohio 1998), *aff'd* 302 F.3d 637 (6th Cir. 2002), *cert. denied* 539 U.S. 969 (2003); *Auto Chem Labs., Inc. v. Turtle Wax, Inc.*, No. 3:07CV156, 2008 WL 4372697, at *15 n.20 (S.D. Ohio Sept. 23, 2008).

*Second*, the existence of the Selling Agreement—for purposes of determining whether sales representatives can enforce it—**is** in dispute. Ohio National itself created the dispute. In seeking to dismiss Plaintiff Cook's breach-of-contract claim, Ohio National asserts that the Selling Agreement does not encompass the representatives (as third-party beneficiaries) or their losses (which Ohio National says are nonexistent). But Ohio National cannot have it both ways. Either the Selling Agreement encompasses the representatives' well-pled losses (*i.e.*, a breach-of-contract claim is viable), or the losses do not flow from the contract (*i.e.*, an unjust enrichment

claim is viable). The magistrate committed no error in allowing the unjust enrichment claim to proceed.

## IV. CONCLUSION

Ohio National sold billions of dollars' worth of variable annuities through the efforts of sales representatives across the country. Those representatives elected to receive trail commissions (and turned down a higher up-front commission) based on Ohio National's promise that the trail commissions would continue to be paid until the annuity was surrendered or annuitized. Instead, Ohio National surprised everyone by unilaterally deciding to pilfer the sales representatives' commissions on active annuities for its own benefit. That money belongs to the representatives, not Ohio National. Ohio National has been unjustly enriched and has breached the Selling Agreement.

Ohio National's objections should be overruled, and the R&R should be adopted in full.

Respectfully submitted,

Ronen Sarraf (*pro hac vice*)
Joseph Gentile (*pro hac vice*)
SARRAF GENTILE LLP
10 Bond Street, Suite 212
Great Neck, New York 11021
Tel.: 516-699-8890
Fax: 516-699-8968
E-mail: ronen@sarrafgentile.com
joseph@sarrafgentile.com

**Counsel for Plaintiff and the Class**

s/ James B. Helmer, Jr.
James B. Helmer, Jr. (0002878)
Robert M. Rice (0061803)
Jennifer L. Lambert (0075762)
B. Nathaniel Garrett (0090939)
HELMER, MARTINS, RICE &
  POPHAM CO., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
Email: jhelmer@fcalawfirm.com
rrice@fcalawfirm.com
jlambert@fcalawfirm.com
ngarrett@fcalawfirm.com

**Trial Attorney and Counsel for
Plaintiff and the Class**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on July 23, 2019, a copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all counsel of record to this action.

                                                 s/ James B. Helmer, Jr.