IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Stephen Cook,

  Plaintiff,

v.

Ohio National Life Insurance Company,
*et al.*,

  Defendants.

Case No. 1:19-cv-195

Judge Susan J. Dlott

Order Rejecting Report and
Recommendations and Granting
Defendants' Motion to Dismiss

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 10), a Report and Recommendation ("R&R") (Doc. 26) recommending denial of the Motion for Judgment on the Pleadings, and Defendants' Objections (Doc. 32) to the R&R. Also pending before the Court are Defendants' First Motion to Stay Discovery (Doc. 23) and Plaintiff's Motion to Strike (Doc. 24) the First Motion to Stay Discovery.

The primary issue to be resolved at this time is whether Plaintiff Stephen Cook has standing to assert claims based on an alleged breach of a contract to which he is not a party. For the reasons that follow, the Court finds that Cook lacks standing. Accordingly, the Court will **REJECT** the R&R and **GRANT** the Motion for Judgment on the Pleadings.

I.  **BACKGROUND**

Cook is a licensed securities representative for Triad Advisors LLC, a broker dealer. Triad Advisors, through its representatives such as Cook, sold certain variable annuities issued by Defendants Ohio National Life Insurance Company, Ohio National Life Assurance Company, Ohio National Equities, Inc., and Ohio National Financial Services, Inc. (collectively, "Ohio National") pursuant to a Selling Agreement between Ohio National and Triad Advisors. Cook was not a party to the Selling Agreement, but he asserts that he was an intended third-party

1

beneficiary of the Selling Agreement. Cook alleges that Ohio National breached the Selling Agreement by stopping payment of trail commissions on previously sold variable annuity contracts after Ohio National terminated the Selling Agreement without cause effective December 12, 2018.

Cook initiated this case on March 11, 2019. (Doc. 1.) He seeks to represent a Rule 23 class of securities representatives:

> All securities representatives who: (1) sold an individual variable annuity with a guaranteed minimum income benefit rider pursuant to any and all Selling Agreements by and between Defendants and broker-dealers, provided that such annuity had not been surrendered or annuitized by December 12, 2018;
> (2) received commission compensation from such sale in the form of trail commissions; and (3) ceased receiving such trail commissions pursuant to Defendants' 2018 unilateral decision to terminate the Selling Agreements.

(*Id.* at PageID 13.) He asserts claims against Ohio National for (1) breach of contract and (2) unjust enrichment. (*Id.* at PageID 16–18.)[1]

Ohio National moved for dismissal arguing primarily that Cook lacked standing to bring claims based on the Selling Agreement between Triad Advisors and Ohio National. (Doc. 10.) On June 28, 2019, the Magistrate Judge issued an R&R concluding that Cook, as a securities representative for Triad Advisors, was an intended third-party beneficiary of the Selling Agreement. (Doc. 26 at PageID 254–255.) She recommended denying the Motion to Dismiss. (*Id.* at PageID 258.)

Ohio National filed Objections to the R&R, and Cook opposed those Objections. (Docs. 32, 33.) This Court held oral arguments on the matter on September 17, 2019. The parties agreed that the breach of contract claim must be dismissed if Cook was not an intended third-

---

[1] Cook also asserts a purported claim for declaratory judgment. (Doc. 1 at PageID 18–19.) However, that is a non-substantive claim, and Cook can obtain declaratory relief only if he proves breach of contract or unjust enrichment.

party beneficiary to the Selling Agreement. However, Cook disputed that his unjust enrichment claim succeeds or fails based on whether he was an intended third-party beneficiary.

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(1) authorizes a dismissal of a complaint where the Court lacks jurisdiction over the subject matter of the complaint. Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

Pursuant to Federal Rule of Civil Procedure 72(b), the district court considers de novo any part of a magistrate judge's report and recommendation on a dispositive motion to which a party has filed objections.

## III. ANALYSIS

### A. Breach of Contract

Cook alleges that Ohio National breached the Selling Agreement by ending the payment of trail commissions. (Doc. 1 at PageID 16–17.) His claim is dependent upon a finding that he, as a Triad Advisors securities representative, can enforce the Selling Agreement between Triad Advisors and Ohio National as an intended third-party beneficiary. A third-party beneficiary has enforceable rights under a contract only if he is an "intended beneficiary" as opposed to an "incidental beneficiary." *Norfolk & W. Co. v. U.S.*, 641 F.2d 1201, 1208 (6th Cir. 1980). Ohio has adopted the "intent to benefit" test stated in the Restatement (Second) of Contracts § 302 to distinguish intended beneficiaries from incidental beneficiaries. *Hill v. Sonitrol of SW Ohio,*

*Inc.*, 36 Ohio St. 3d 36, 521 N.E.2d 780, 784 (1988); *see also CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 738 (S.D. Ohio 2018) (citing *Hill* and quoting § 302). Section 302 provides in relevant part of follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981). Under this test, "if the promisee . . . intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract." *Hill*, 521 N.E.2d at 784–785 (quoting *Norfolk*, 641 F.2d at 1208). More recently, the Supreme Court of Ohio has stated that "there must be evidence that the contract was intended to directly benefit that third party." *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 957 N.E.2d 3, 7 (2011).

The Court incorporates the analysis in the R&R as if fully rewritten herein to the extent that the Magistrate Judge set forth the arguments of both parties in detail and summarized case law supporting their arguments. (Doc. 26 at PageID 248–254.) Ultimately, the Magistrate Judge was persuaded to follow the conclusion in *Commonwealth Equity Services, LLC and Margaret Benison v. The Ohio National Life Insurance Company, et al.*, No. 18-cv-12314-DJC, Doc. 28 (D. Mass. April 3, 2019) ("*Benison*"), that a securities representative was an intended third-party beneficiary of a similar selling agreement between Commonwealth Equity and Ohio National. (Doc. 26 at PageID 254–255.) The primary issue in *Benison* was whether the district court had to enforce an arbitration provision in an addendum to the selling agreement between Commonwealth Equity and Ohio National. *Benison*, Doc. 28 at 5, 8. The district court held that the contractual parties were bound by the arbitration agreement. *Id.*, Doc. 28 at 10. The district

court then separately, in a footnote which constituted dicta to the holding, addressed whether Benison, the representative, could have enforced the arbitration provision in the selling agreement as an intended third-party beneficiary. *Id.*, Doc. 28 at 10 n.3. The district court summarily concluded that Benison was an intended third-party beneficiary and could enforce the selling agreement. *Id.* For the reasons that follow, this Court respectfully disagrees with the dicta conclusion in *Benison* and with the Magistrate Judge to the extent she was persuaded by *Benison*.

Cook, on behalf of a class of similarly-situated representatives, seeks to enforce § 9 of the Selling Agreement, which involves the payment of trail commissions. Relevant to Cook's underlying claim against Ohio National for breach of contract, § 9 stated that "[t]he terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by [Ohio National]." (Doc. 10-1 at PageID 92.)[2] Cook alleges that Ohio National breached this provision in § 9 because it ceased paying trail commissions under the Selling Agreement after it terminated the Selling Agreement without cause. However, upon examination, Cook and other representatives were not the parties who were intended to receive the benefit of compensation under the Selling Agreement.

To begin, Triad Advisors and Ohio National were the only parties to the Selling Agreement. (Doc. 10-1 at PageID 91.) Section 9 of the Selling Agreement explicitly stated that "[c]ommissions payable in connection with the [variable annuity] contracts shall be paid to [Triad Advisors], or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement." (*Id.* at PageID 92.) It gave Ohio National the right to "offset future

---

[2] Regarding the underlying dispute, Ohio National relies on a provision in the Commission Schedule attached to the Selling Agreement to assert that it was obligated to pay trail commissions only so long as the Selling Agreement remained in force. The Court does not express any opinion on the merits of the underlying dispute in this Order.

5

compensation payable to [Triad Advisors] against any compensation to be returned to [Ohio National] by [Triad Advisors]." (*Id.*) Therefore, under the Selling Agreement the payment of compensation—minus any offsets from compensation—flows only from Ohio National to Triad Advisors.

In fact, Triad Advisors and Ohio National disclaimed any intention for Ohio National to render payment to Triad Advisors' representatives for the solicitation of the variable annuity contracts. Section 9 of the Selling Agreement also provided that "[c]ompensation to the [Triad Advisors'] Representatives for Contracts solicited by the Representatives and issued by [Ohio National] will be governed by agreement between [Triad Advisors] and its Representatives and its payment will be the [Triad Advisors'] responsibility." (*Id.*) This provision did not mandate that Triad Advisors remit the commissions it receives from Ohio National for the sale of its annuities to the representative(s) who sold the annuities. Rather, it provided that any compensation paid to the representatives such as Cook will be Triad Advisors' responsibility. (*Id.*) The requirement to have a separate contract cuts against any suggestion that the Selling Agreement was intended to directly benefit representatives like Cook. *See Huff*, 957 N.E.2d at 7 (direct benefit requirement). Significantly, this Selling Agreement provision complied with Financial Industry Regulatory Authority ("FINRA") Rule 2320, which prohibits securities representatives from receiving compensation for the sale of variable insurance policies from the company that issued the policies.[3]

Cook points out in rebuttal that the Schedule of Commissions, which was attached to and incorporated in the Selling Agreement, included a provision in which Triad Advisors elected to

---

[3] This FINRA Rule creates a procedural dilemma if the Court were to find that Cook and other representatives were intended third-party beneficiaries. In the event that Ohio National was found liable for breach of contract, it is questionable whether the Court could issue a judgment requiring Ohio National to pay damages to representatives for unpaid trail commissions because the FINRA Rule 2320 prohibits Ohio National from paying compensation to the representatives for the sale of variable annuity contracts.

6

allow its representatives to select among several trail commission plan options. (Doc. 10-1 at PageID 108–109.) While this suggests that Triad Advisors might remit at least a portion of the trail commissions to its representatives, it was not a commitment to remit each trail commission payment in full to the representatives. Triad Advisors could have elected on the same form to make the trail commission plan selection itself instead. The timing, amount, and other terms of any payment from Triad Advisors to Cook or other representatives still was required to be set forth in a separate contract as stated in § 9 of the Selling Agreement. In fact, that same Schedule of Commissions also stated explicitly that "[t]rail commissions will continue to be paid [from Ohio National] to the broker dealer of record [Triad Advisors]." (*Id.*) On the whole, the Court finds that the payment provisions of the Selling Agreement do not establish that representatives like Cook were more than incidental beneficiaries of the contract.

Additionally, the numerous other references to representatives in the Selling Agreement do not demonstrate an intent to give enforceable rights to the representatives. The fourth "Whereas" clause in the Selling Agreement stated that Ohio National proposed to have Triad Advisors' representatives solicit sales of its variable annuity contracts. (*Id.* at PageID 91.) However, it is not remarkable that a limited liability company would act through its employees or agents. Other references to representatives in the Selling Agreement appear intended for Ohio National's protection. For example, § 4 required Triad Advisors to certify that its representatives had not been convicted of a felony or a misdemeanor involving fraud or dishonesty; § 5 required Triad Advisors to ensure that its representatives were properly registered, qualified, and supervised; § 16 stated that both Triad Advisors and its representatives were independent contractors with respect to Ohio National; and § 17 required Triad Advisors to notify Ohio National if legal proceedings were initiated against its representatives. (Doc. 10-1 at PageID 91–

93.) These sections do not evidence an intent to confer benefits upon representatives, but rather to provide protection for Ohio National from unscrupulous, unqualified, or negligent representatives.

The Court finds the case of *Joseph v. Hosp. Serv. Dist. No. 2*, 939 So. 2d 1206 (La. 2006) to be instructive. The case involved a contract between a hospital and a medical corporation for the medical corporation's doctors to provide anesthesia services to the hospital. *Id.* at 1208. When the hospital terminated the contract, individual doctors in the medical corporation sought to enforce it as intended third-party beneficiaries. *Id.* at 1208–1209. The Supreme Court of Louisiana held that the doctors were not intended third-party beneficiaries under the contract even though they "perform[ed] the services to satisfy the contractual obligation of the corporation." *Id.* at 1214–1215. It stated that "all corporations act through individuals[,]" but that the breach of contract claim was "to be asserted by the corporation, not the employees, officers or shareholders." *Id.* at 1215. Further, although the contractual language was not set out, the Supreme Court's explanation of why the doctors were not third-party beneficiaries is pertinent to this case as well:

> While the contract imposed certain obligations on the doctors regarding their qualifications, there was no benefit provided in the contract directly to the doctors that they could demand from the Hospital. The doctors were not to be paid by the Hospital. The doctors were not hired by the Hospital. The doctors had no right to demand employment by the Hospital. In fact, the contract specifically provided there was no intent to create an employer/employee relationship between the parties. Based on our review of the contract, there is no obligation owed by the Hospital to the individual doctors which will be discharged by performance of the contract because the contract provides no direct benefit to the doctors.

*Id.* at 1214.

Likewise, here, the Selling Agreement is readily enforceable by Triad Advisors, not its representatives who provided the service of soliciting the sales of variable annuity contracts. Ohio National did not hire the representatives, was not their employer, and did not pay them

8

compensation. The financial benefit of compensation flowed from Ohio National to Triad Advisors. In fact, Ohio National was prohibited by FINRA Rule 2320 from paying compensation to representatives like Cook. The Court concludes that the securities representatives were not intended third-party beneficiaries under the Selling Agreement. Therefore, Cook, as a Triad Advisors representative, does not have standing to assert a breach of contract claim based on the Selling Agreement.

## B.     Unjust Enrichment

Cook asserts a claim for unjust enrichment in the alternative to his breach of contract claim. (Doc. 1 at PageID 17–18.) To establish a claim for unjust enrichment in Ohio, a plaintiff must prove three elements: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E.2d 1298, 1302 (1984)). Unjust enrichment claims ordinarily can be pleaded in the alternative to breach of contract, but only when the existence of the contract is in dispute. *Id.* This is because "a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Id.* (citing *Wuliger v. Mfg. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009)). The Selling Agreement here covers the subject of whether or not Ohio National had the obligation to pay trail commissions on previously sold variable annuity contracts after it terminated the Selling Agreement. Therefore, Cook cannot bring an unjust enrichment claim to recover payment for the same prior sales of variable annuity contracts.

## IV. CONCLUSION

For the foregoing reasons, the Court Report and Recommendations (Doc. 26) is respectfully **REJECTED** and Defendants' Motion to Dismiss (Doc. 10) is **GRANTED**. Also, First Motion to Stay Discovery (Doc. 23) and Plaintiff's Motion to Strike (Doc. 24) both are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 2nd day of October, 2019.

BY THE COURT:

_Susan J. Dlott_
Susan J. Dlott
United States District Judge