**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 09, 2020

Mr. B. Nathaniel Garrett
Mr. James B. Helmer Jr.
Mr. Robert M. Rice
Helmer, Martins, Rice & Popham
600 Vine Street, Suite 2704
Cincinnati, OH 45202

Mr. Christopher J. Hogan
Mr. Marion H. Little Jr.
Zeiger, Tigges & Little
41 S. High Streeet, Suite 3500
Columbus, OH 43215

Re: Case No. 19-3984, *Stephen Cook v. Ohio National Life Insurance, et al*
Originating Case No. : 1:19-cv-00195

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0180p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

STEPHEN COOK, Individually and On Behalf of All Others Similarly Situated,

> *Plaintiff-Appellant*,

*v.*

OHIO NATIONAL LIFE INSURANCE COMPANY; OHIO NATIONAL LIFE ASSURANCE CORPORATION; OHIO NATIONAL EQUITIES, INC.; OHIO NATIONAL FINANCIAL SERVICES, INC.,

> *Defendants-Appellees*.

No. 19-3984

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:19-cv-00195—Susan J. Dlott, District Judge.

Argued: May 5, 2020

Decided and Filed: June 9, 2020

Before: MERRITT, SUHRHEINRICH, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ARGUED:** B. Nathaniel Garrett, HELMER, MARTINS, RICE & POPHAM CO., L.P.A., Cincinnati, Ohio, for Appellant.  Marion H. Little, Jr., ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellees.  **ON BRIEF:** B. Nathaniel Garrett, James B. Helmer, Jr., Robert M. Rice, HELMER, MARTINS, RICE & POPHAM CO., L.P.A., Cincinnati, Ohio, for Appellant.  Marion H. Little, Jr., Christopher J. Hogan, ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellees.


**OPINION**

MERRITT, Circuit Judge.  The sole issue in this diversity action is whether plaintiff has standing under Ohio law to assert claims based on an alleged breach of contract when he is not a party to the contract.  Plaintiff Stephen Cook sold variable annuities on behalf of defendants, referred to herein collectively as Ohio National, pursuant to a contract between Ohio National and a broker-dealer, Triad Advisors.  Under the agreement, Ohio National paid commissions on the previously sold annuities to Triad, who in turn paid commissions to plaintiff pursuant to a separate agreement between plaintiff and Triad that is not at issue in this appeal.  Triad is not a party to this suit.  After Ohio National terminated its agreement with Triad, Ohio National refused to pay further commissions on annuities sold during the term of the agreement.  In an attempt to recover the commissions, plaintiff sued Ohio National for breach of its agreement with Triad.  Plaintiff contends that as a "third-party beneficiary" to the agreement between Ohio National and Triad, he has standing to bring suit.  Ohio National disagreed, and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The merits of the underlying claim concerning the alleged breach by Ohio National are not before us in this appeal.

The district court found that, under Ohio law, plaintiff is not an "intended" third-party beneficiary of the agreement between Ohio National and Triad, and he therefore cannot maintain an action against Ohio National.  The district court also found that plaintiff could not maintain an alternative claim of unjust enrichment claim against Ohio National.  Accordingly, it granted Ohio National's motion to dismiss.  For the reasons that follow, we affirm the judgment of the district court.

**I. Facts and Procedural History**

Plaintiff, a resident of Texas, is a licensed securities representative for Triad Advisors LLC, a broker dealer.  Triad, through its representatives such as plaintiff, sold certain variable annuities issued by defendants Ohio National Life Insurance Company, Ohio National Life Assurance Company, Ohio National Equities, Inc., and Ohio National Financial Services, Inc.

pursuant to a "Selling Agreement" between Ohio National and Triad.[1] Defendants are all Ohio corporations. Plaintiff was not a party to the Selling Agreement, but he asserts that he was an intended third-party beneficiary of the Selling Agreement. Plaintiff alleges that Ohio National breached the Selling Agreement by ceasing to pay so-called "trail commissions" on previously sold variable annuity contracts after Ohio National terminated the Selling Agreement without cause. Complaint ¶ 60.

Plaintiff, on behalf of a class of similarly situated representatives,[2] seeks to enforce Section 9 of the Selling Agreement, which involves the payment of commissions from Ohio National to Triad. Section 9 of the Selling Agreement states in full:

> 9. COMMISSIONS PAYABLE
>
> Commissions payable in connection with the Contracts shall be paid to [Triad], or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement as they may be amended from time to time and in effect at the time the Contract Payments are received by [Ohio National]. [Ohio National] reserves the right to: revise the Commission Schedules at any time upon at least thirty (30) days prior written notice to [Triad]. [Ohio National] also reserves the right to adjust the compensation payable on sales of [Ohio National] products that replace existing [Ohio National] contracts and offset future compensation payable to [Triad] against any compensation to be returned to [Ohio National] by [Triad]. Compensation to [Triad's] Representatives for Contracts solicited by the Representatives and issued by [Ohio National] will be governed by an agreement between [Triad] and its Representatives and its payment will be [Triad's] responsibility. In those states where express assignment of commissions is required, [Triad] hereby assigns its Representatives' commissions to its affiliated insurance agency for those states.

---

[1]Selling Agreements from various years appear in the record, but they are identical for purposes of the analysis herein.

[2]Plaintiff describes the class he seeks to certify as follows:

> All securities representatives who: (1) sold an individual variable annuity with a guaranteed minimum income benefit rider pursuant to any and all Selling Agreements by and between Defendants and broker-dealers, provided that such annuity had not been surrendered or annuitized by December 12, 2018; (2) received commission compensation from such sale in the form of trail commissions; and (3) ceased receiving such trail commissions pursuant to Defendants' 2018 unilateral decision to terminate the Selling Agreements.

Complaint ¶ 42.

> [Triad] will not pay any compensation to a Representative licensed pursuant to this Agreement until such Representative is authorized to receive such compensation under applicable state law.
>
> The terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by [Ohio National], provided that [Triad] remains a broker-dealer in good standing with the NASO and other state and federal regulatory agencies and that [Triad] remains the broker-dealer of record for the account.

Specifically relevant to plaintiff's underlying claim against Ohio National for breach of contract, Section 9 states that "[t]he terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by [Ohio National]." Plaintiff alleges that Ohio National breached this provision in Section 9 because it ceased paying commissions under the Selling Agreement after it allegedly terminated the Selling Agreement without cause.

Plaintiff initiated this case as a class action, and seeks to represent a Rule 23 class of securities representatives. Class certification is not at issue in this appeal. He asserts claims against Ohio National for (1) breach of contract; and (2) unjust enrichment. Complaint ¶¶ 55-67. Ohio law controls interpretation of the contract. Selling Agreement § 22. Ohio National moved for dismissal on the ground that plaintiff, as a nonsignatory to the Selling Agreement, lacked standing to bring claims arising from a contract to which he is not a party.

The magistrate judge, relying primarily on dicta in a footnote from a Massachusetts case concerning an arbitration clause, issued a Report and Recommendation concluding that plaintiff was an intended third-party beneficiary of the Selling Agreement between Ohio National and Triad, and recommended denying the motion to dismiss.[3] *Cook v. Ohio Nat'l Life Ins. Co., et*

---

[3]The magistrate judge found that plaintiff was an intended third-party beneficiary in her Report and Recommendation. She was persuaded to follow the conclusion in *Commonwealth Equity Services, LLC and Margaret Benison v. The Ohio National Life Insurance Company, et al.*, No. 18-cv-12314, 2019 WL 147013 (D. Mass. April 3, 2019), that a securities representative was an intended third-party beneficiary of a similar selling agreement between Commonwealth Equity and Ohio National. In *Commonwealth Equity*, the plaintiff, Margaret Benison, was a representative working for a broker dealer, similar to the plaintiff in this case. The primary issue was enforcement of an arbitration provision in an addendum to the selling agreement between Commonwealth Equity and Ohio National. The Massachusetts district court held that the contractual parties were bound by the arbitration agreement. The district court then separately, in a footnote constituting dicta to the holding, addressed whether Benison, the representative, could have enforced the arbitration provision in the selling agreement as an intended third-party beneficiary. *Id*. at *6 n.3. The Massachusetts district court concluded, without analysis and citing to Massachusetts state- and First Circuit-law, as well as Section 302(1) of the Restatement (Second) of Contracts, that Benison was an intended third-party beneficiary and could enforce the selling agreement. *Id*. ("Benison could compel arbitration as a third-party beneficiary of the Selling Agreement and the Addendum.").

*al.*, No. 1:19-cv-19, 2019 WL 2717859 (S.D. Ohio June 28, 2019). Ohio National filed objections to the Report and Recommendation, and plaintiff opposed those objections. The district court rejected the Report and Recommendation, and instead found that plaintiff was not an intended beneficiary of the agreement between Triad and Ohio National. The district court also found plaintiff's unjust enrichment claim must be dismissed as well. Ohio National's motion to dismiss was granted. *Cook v. Ohio Nat'l Life Ins. Co., et al.*, No. 1:19-cv-19, 2019 WL 4885500 (S.D. Ohio Oct. 3, 2019). This appeal followed.

## II.  Discussion

This court reviews *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

### A.     Standing to Bring Breach of Contract Claim

Plaintiff alleges that defendant Ohio National breached the Selling Agreement by ceasing to pay certain commissions after it terminated the Selling Agreement without cause. The only issue on appeal is whether plaintiff, as a nonsignatory to the Selling Agreement, can enforce the terms of the Selling Agreement between Triad and Ohio National. Plaintiff's claim is dependent upon a finding that he, as a Triad securities representative, can enforce the Selling Agreement between Triad and Ohio National because he is an intended third-party beneficiary of the Agreement.

---

The magistrate judge in this case acknowledged that "the finding [in *Commonwealth Equity*] was made in connection with a motion to compel arbitration and found in a footnote with minimal analysis." 2019 WL 2717859, at *7. The district court in the instant case disagreed with *Commonwealth Equity* and rejected the Report and Recommendation.

The Ohio Supreme Court has held that only intended third-party beneficiaries may assert rights to contracts to which they are not party. *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 638 N.E.2d 572, 577 (Ohio 1994); *Sony Elec., Inc. v. Grass Valley Grp., Inc.*, Nos. C-010133, C-010423, 2002 WL 440749, at *3 (Ohio Ct. App. Mar. 22, 2002) ("Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio.") (footnote omitted). The Sixth Circuit is in accord. *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980) (A third-party beneficiary has enforceable rights under a contract only if he is an "intended beneficiary" as opposed to an "incidental beneficiary."); *Sagraves v. Lab One, Inc.*, 316 F. App'x 366, 371 (6th Cir. 2008) (same). In *Hill v. Sonitrol of SW Ohio, Inc.*, 521 N.E.2d 780, 784 (Ohio 1988), the Ohio Supreme Court clarified the distinction between intended third-party beneficiaries and incidental third-party beneficiaries, adopting the Restatement (Second) of Contracts, § 302 which provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Sonitrol* also quoted with approval comment e to Section 302 which states in part:

> Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created.

521 N.E.2d at 784 (clarifying that some third-party beneficiaries are merely incidental); *accord Norfolk,* 641 F.2d at 1208 ("[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."). Third parties that are only incidental beneficiaries are generally not permitted to assert claims under contracts to which they are not parties. *Norfolk,* 641 F.2d at 1208. To determine whether plaintiff is an incidental or intended third-party beneficiary, we look to the terms of the Selling Agreement. *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011) (In applying the intent-to-benefit test,

the court should look first to the parties' expression of intent "in the language of the agreement."). The Supreme Court of Ohio stated that "Ohio law . . . requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party." *Id*.

Looking to the terms of the Selling Agreement as directed by the Ohio Supreme Court, the language found in Section 9 of the Selling Agreement belies plaintiff's claim that he is an intended third-party beneficiary. Section 9, entitled "Commissions," contains directives that show that plaintiff is not an intended third-party beneficiary: (1) Ohio National paid commissions directly to Triad, not its representatives such as plaintiff; (2) a separate agreement governed the payment of commissions, if any, from Triad to representatives; and (3) the payment of such commissions was the sole responsibility of Triad. As detailed further below, taken together, the provisions contained in Section 9 of the Selling Agreements establish, as a matter of law, that plaintiff is not an intended third-party beneficiary.

Section 9 of the Selling Agreement explicitly stated that "[c]ommissions payable in connection with the [variable annuity] contracts shall be paid to [Triad], or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement." It gave Ohio National the right to "offset future compensation payable to [Triad] against any compensation to be returned to [Ohio National] by [Triad]." Selling Agreement § 9. Therefore, under the Selling Agreement, payment of compensation—minus any offsets from compensation—flowed only from Ohio National to Triad.

Further evidence that the Selling Agreement is intended only for the benefit of Triad is demonstrated by language where Triad and Ohio National disclaimed any intention for Ohio National to render payment to Triad's representatives for the sale of the variable annuity contracts. Section 9 of the Selling Agreement provided that "[c]ompensation to [Triad's] Representatives for Contracts solicited by the Representatives and issued by [Ohio National] will be governed by agreement between [Triad] and its Representatives and its payment will be [Triad's] responsibility." *Id*. This provision directs that any payment to Triad's representatives is solely within Triad's control. It does not mandate that Triad remit the commissions it receives from Ohio National for the sale of its annuities to the representatives who sold the annuities.

No. 19-3984         *Cook v. Ohio Nat'l Life Ins., et al.*         Page 8

Rather, it provided that any compensation paid to the representatives such as plaintiff will be Triad's responsibility. The requirement to have a separate contract cuts against any suggestion that the Selling Agreement was intended to directly benefit representatives like plaintiff. *See Huff*, 957 N.E.2d at 7.[4]

Plaintiff next points out that the Schedule of Commissions, which was attached to and incorporated into the Selling Agreement, included a provision whereby Triad elected to allow its representatives to select among several trail commission plan options. While this suggests that Triad might remit at least a portion of the trail commissions to its representatives, it was not a commitment to remit each trail commission payment in full to the representatives. Triad could have elected on the same form to make the trail commission plan selection itself instead. The timing, amount, and other terms of any payment from Triad to plaintiff and other representatives was required to be set forth in a separate contract. In fact, the Schedule of Commissions also stated explicitly that "[t]rail commissions will continue to be paid [from Ohio National] to the broker dealer of record [Triad]."

Plaintiff argues that the Selling Agreement repeatedly referenced the representatives, so they must be intended beneficiaries. The references in the Selling Agreement are intended for Ohio National's protection, not the representatives' benefit. For example, the Selling Agreement states that Ohio National proposed to have Triad solicit sales of its variable annuity contracts. This reference to the Triad representatives by Ohio National acknowledged that Triad's representatives were necessary to sell its products. However, many companies enter into contracts where they utilize representatives, agents or employees of one of the contracting parties for the benefit of the other, but this does not make the representatives intended third-party beneficiaries to the contract. Section 16 of the Selling Agreement explicitly states that both Triad and its representatives are independent contractors with respect to Ohio National.

---

[4]The Selling Agreement provision complied with financial industry rules that prohibit securities representatives from receiving compensation for the sale of variable insurance policies from the company that issued the policies. Plaintiff therefore argues that Section 9 is only included because it is required by the securities-industry regulations and it does not necessarily reflect the intent of the parties as to the payment of commissions. Other than the conclusory statement, plaintiff does not provide other evidence that financial industry rules are the primary purpose for the structure of commission payments found in Section 9 of the Agreement.

On this point, the district court found *Joseph v. Hospital Service District No. 2*, 939 So. 2d 1206, 1208-09 (La. 2006), instructive. In *Joseph*, a contract existed between a hospital and a medical corporation for the medical corporation's doctors to provide anesthesia services to the hospital. When the hospital terminated the contract, individual doctors in the medical corporation sought to enforce it as intended third-party beneficiaries. The Supreme Court of Louisiana held that the doctors were not intended third-party beneficiaries under the contract even though they "perform[ed] the services to satisfy the contractual obligation of the corporation." *Id*. at 1214–215. It stated that "all corporations act through individuals[,]" but that the breach of contract claim was "to be asserted by the corporation, not the employees, officers or shareholders." *Id*. at 1215. Further, although the contractual language was not set out, the Louisiana Supreme Court's explanation of why the doctors were not third-party beneficiaries is pertinent to this case as well:

> While the contract imposed certain obligations on the doctors regarding their qualifications, there was no benefit provided in the contract directly to the doctors that they could demand from the Hospital. The doctors were not to be paid by the Hospital. The doctors were not hired by the Hospital. The doctors had no right to demand employment by the Hospital. In fact, the contract specifically provided there was no intent to create an employer/employee relationship between the parties. Based on our review of the contract, there is no obligation owed by the Hospital to the individual doctors which will be discharged by performance of the contract because the contract provides no direct benefit to the doctors.

*Id*. at 1214. Likewise, here, the Selling Agreement is enforceable by Triad, not its representatives, such as plaintiff, who provided the service of soliciting the sales of variable annuity contracts. Ohio National did not hire the representatives, was not their employer, and did not pay them compensation.

Other examples from the Selling Agreement relied on by plaintiff in an attempt to demonstrate his status as an intended beneficiary are equally unavailing. Section 4 of the Selling Agreement required Triad to certify that its representatives had not been convicted of a felony or a misdemeanor involving fraud or dishonesty, Section 5 required Triad to ensure that its representatives were properly registered, qualified, and supervised, and Section 17 required Triad to notify Ohio National if disciplinary proceedings were initiated against its representatives. These sections do not evidence an intent to confer benefits upon representatives, but rather to provide protection for Ohio National from unscrupulous, unqualified, or negligent

No. 19-3984            *Cook v. Ohio Nat'l Life Ins., et al.*            Page 10

representatives. The plain language of the Selling Agreement makes it clear that plaintiff is not an intended third-party beneficiary under the Agreement, and he therefore does not have standing to maintain a breach of contract action against Ohio National.[5]

**B.**   **Unjust Enrichment**

Under Ohio law, unjust enrichment occurs "when a party retains money or benefits which in justice and equity belong to another*." Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio*, 532 N.E.2d 124, 125 (Ohio 1988). To succeed on an unjust enrichment claim under Ohio law, a plaintiff must prove three elements: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (quoting *Hummel v. Hummel*, 14 N.E.2d 923 (Ohio 1938)). While it may appear on its face that plaintiff meets the three elements for purposes of a motion to dismiss, "a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Lehmkuhl v. ECR Corp.,* 6-ca-039, 2008 WL 5104747, at 5 (Ohio Ct. App. Dec. 2, 2008); *see also Wuliger v. Mfg. Life Ins. Co*., 567 F.3d 787, 799 (6th Cir. 2009); *Browning*, 2019 WL 4885205 at *4 (finding that the plaintiff could not assert an unjust enrichment claim because the Selling Agreement covered the same subject).

Here, the Selling Agreement expressly covers the same subject giving rise to plaintiff's unjust enrichment claim—the payment of commissions by Ohio National on previously sold variable annuity contracts. Section 9 of the Selling Agreement unambiguously directs Ohio National to pay commissions to Triad. Accordingly, plaintiff is precluded from bringing an unjust enrichment claim against Ohio National.

---

[5]Two other cases brought in federal court pursuant to identical or almost-identical Selling Agreements to the one here have also determined that the sales representatives did not qualify as intended third-party beneficiaries, thus depriving them of standing to enforce the contract. One, *Browning v. Ohio Natl Life Ins. Co*., 1:18-cv-763, 2019 WL 4885205 (S.D. Ohio Oct. 2, 2019), *appeal docketed*, No. 19-4082 (6th Cir. Nov. 4, 2019), was decided by the same district court judge as in this case. The other, *Whatley v. Ohio National Life Insurance Co*., No. 1:19-cv-40, 2019 WL 6173500 (M.D. Ala. Nov. 19, 2019), relied heavily on *Browning* and the district court's opinion below in this case.

No. 19-3984               *Cook v. Ohio Nat'l Life Ins., et al.*                Page 11

Plaintiff urges us to rely on *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 861-62 (6th Cir. 2002). But *Reisenfeld* is distinguishable from the facts of the instant case. In that case, plaintiff, a broker, had an agreement with a second broker to receive a portion of any commissions paid to the second broker by a third party. We held that the plaintiff could recover from the third party under a quasi-contract theory despite the lack of privity between the plaintiff and the third party because the third party was relieved of its obligation to pay commissions to the second broker. Here, plaintiff has not alleged that he cannot recover commissions from Triad. That distinction bars his claim.

## Conclusion

Accepting the factual allegations as true and construing them in the light most favorable to the plaintiff, plaintiff cannot demonstrate that he is anything more than an incidental beneficiary to the Selling Agreement, or that he can recover under a theory of unjust enrichment. We affirm the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-3984

STEPHEN COOK, Individually and On Behalf of All Others Similarly Situated,

    Plaintiff - Appellant,

v.

OHIO NATIONAL LIFE INSURANCE COMPANY; OHIO NATIONAL LIFE ASSURANCE CORPORATION; OHIO NATIONAL EQUITIES, INC.; OHIO NATIONAL FINANCIAL SERVICES, INC.,

    Defendants - Appellees.

**FILED**
Jun 09, 2020
DEBORAH S. HUNT, Clerk

Before:  MERRITT, SUHRHEINRICH, and SUTTON, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk